# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANTONIO DESHAWN BARBEAU,<br><br>                Petitioner,<br><br>v.<br><br>WARDEN BRIAN FOSTER,<br><br>                Respondent. | Case No. 17-CV-1744-JPS<br><br><br>**ORDER** |

**1.     INTRODUCTION**

In September 2012, when he was just thirteen years old, Petitioner brutally murdered his great-grandmother with a hatchet. He did so not in a fit of passion, but simply to steal her valuables. Petitioner's feeble attempts to cover up his crime failed, and he was charged with first-degree intentional homicide. He pleaded no contest to the charge. Petitioner was sentenced to life imprisonment with his first eligibility for supervised release on November 24, 2048. Petitioner then filed a post-conviction motion raising a host of issues and seeking a much sooner potential release date. This led to an amended judgment being issued, but Petitioner was largely denied the relief he sought, including an advanced release date, so he appealed. The Wisconsin Court of Appeals rejected Petitioner's arguments, and the Wisconsin Supreme Court denied his petition for review. The U.S. Supreme Court thereafter denied Petitioner's request for a writ of certiorari. The instant habeas petition was filed on December 13, 2017. The petition is now fully briefed, and for the reasons explained below, it must be denied.

## 2. BACKGROUND

Petitioner's crime is a Class A felony in Wisconsin, which carries a mandatory penalty of life imprisonment. Wis. Stat. §§ 940.01, 939.50. A person subject to life imprisonment may nevertheless be released on supervision, either after serving twenty years or some other period set by the sentencing judge (not less than twenty years). *Id.* § 973.014(1g)(a). That second option, left to the sentencing judge's sound discretion, is what the judge chose in Petitioner's case. *State of Wisconsin v. Barbeau*, 883 N.W.2d 520, 529 (Wis. Ct. App. 2016) ("[I]n sentencing an offender to life imprisonment, [Section] 973.014(1g)(a) gives the circuit court three options: eligibility for release to extended supervision after twenty years, after some time later than twenty years, or not eligible for release to extended supervision.").

Petitioner pleaded no contest to the murder charge in exchange for the state's recommendation that he be eligible for supervised release after thirty-five years. *Id.* at 525. At sentencing, the circuit court engaged in a thorough discussion of the facts of the case in determining an appropriate supervision eligibility date. *Id.* It noted that if he were an adult, Petitioner's horrific crime would not warrant any potential for supervised release. *Id.* However, because of Petitioner's young age, the remarks of his family at the hearing, and the state's recommendation, the circuit court found that release eligibility was appropriate. *Id.* The date was set for November 24, 2048, which would be Petitioner's fiftieth birthday. *Id.* This would be just slightly beyond the thirty-five year anniversary of Petitioner's incarceration.

More than a year after sentencing, and with new counsel, Petitioner filed a motion for post-conviction relief. *Id.* at 526. He argued that the

parties and circuit court had erroneously used the term "parole" in the sentencing hearing and judgment, when "extended supervision" was the proper term. *Id.* This was unfortunately true, and to Petitioner, this was more than a typographical error. *Id.* Rather, the differences between parole and extended supervision represented a new factor warranting modification of his sentence. *Id.* Namely, Petitioner wanted a supervision eligibility date set at twenty years instead of thirty-five. *Id.* Petitioner further argued that his counsel at sentencing was ineffective for not raising the terminology issue. *Id.* Finally, Petitioner asserted that Wisconsin's sentencing scheme for Class A felonies was unconstitutional as applied to juveniles like himself. *Id.*

The circuit court amended the judgment to reflect Petitioner's eligibility for extended supervision and not parole, but otherwise rejected his bid for relief. He appealed, and on June 22, 2016, the Wisconsin Court of Appeals affirmed that disposition. Petitioner then filed a petition for review with the Wisconsin Supreme Court. His petition was limited to two issues: 1) the terminology error was a new factor warranting a sentencing modification, and 2) Wisconsin's sentencing scheme was unconstitutional for juveniles. (Docket #19-6 at 2). The petition for review was denied, as was a subsequent petition for a writ of certiorari to the U.S. Supreme Court. (Docket #1 at 40, 105).

3. **LEGAL STANDARD**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his

constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). In Petitioner's case, that would be the Wisconsin Court of Appeals' June 22, 2016 opinion.

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

4. **ANALYSIS**

The petition in this case states one ground for relief: that Wisconsin's sentencing scheme for Class A felonies is unconstitutional as applied to juveniles. (Docket #1 at 7–8). In light of the standard of review, this Court must answer the following question: was it unreasonable or contrary to U.S. Supreme Court precedent for the Wisconsin Court of Appeals to reject this argument when Petitioner raised back in 2016? The answer is clearly no.

The Wisconsin Court of Appeals discerned three federal constitutional arguments in Petitioner's appeal:

> First, that Wis. Stat. § 973.014(1g)(a)3 is unconstitutional because it imposes a life sentence and one option does not allow for extended supervision at all. Second, that the mandatory minimum of twenty years' imprisonment

> provided by § 973.014(1g)(a)1 is "categorically unconstitutional" when it is "applied to children." This conclusion, Barbeau argues, follows as a natural extension flowing from a trilogy of cases decided by the United States Supreme Court and is the same one the Iowa Supreme Court reached with respect to all mandatory minimum sentences when applied to juveniles, which Barbeau urges us to adopt. Third and finally, he argues that the statutory scheme for release on extended supervision "does not afford a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." This is because in deciding whether an offender should be released on extended supervision, a court may consider only whether the offender is a danger to the public. In addition, an offender is not guaranteed the right to a hearing or a right to counsel.

*Barbeau*, 883 N.W.2d at 528–29. Each of these contentions was founded on the proscription of cruel and unusual punishments found in the Eighth Amendment. *Id.* at 529–35.

The Court of Appeals addressed each argument in turn. As to the first, it discussed the U.S. Supreme Court's recent opinions on sentencing for juveniles. *Id.* at 529–31. *Roper v. Simmons*, 543 U.S. 551, 568 (2005), barred the use of the death penalty for juveniles, and *Graham v. Florida*, 560 U.S. 48, 79 (2010), held that juveniles cannot be sentenced to life imprisonment without the possibility of parole for nonhomicide crimes. *Miller v. Alabama*, 567 U.S. 460, 479 (2012), states that for homicide crimes, a sentencing scheme which *mandates* life imprisonment without parole for juveniles violates the Eighth Amendment. Rather, such schemes must permit the sentencing court to account for the offender's youth and the issues attendant to that fact. *Id.* The Court of Appeals found that Wisconsin's sentencing scheme was in accord with these rulings because it gives the

sentencing court discretion in determining a date for eligibility for supervised release. *Barbeau*, 883 N.W.2d at 531.

Petitioner's second argument was not directly addressed by this precedent. The Court of Appeals proceeded to apply the same analysis used in those decisions, however, to find that the twenty-year mandatory minimum of imprisonment passed muster under the Eighth Amendment. Legislative enactments like Section 973.014(1g)(a)1 are presumed to be constitutional. *Id.* at 530. Challengers bear a heavy burden to show otherwise. *Id.*; *Gregg v. Georgia*, 428 U.S. 153, 174–76 (1976). To assess whether an enactment categorically violates the Eighth Amendment, the U.S. Supreme Court

> first considers objective indicia of society's standards, as expressed in legislative enactments and state practice, to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.

*Graham*, 560 U.S. at 61 (citations and quotations omitted); *Barbeau*, 883 N.W.2d at 530.

The Court of Appeals first found that Petitioner had not shown "that there is any kind of consensus against a mandatory minimum sentence of twenty years' imprisonment for a juvenile who commits first-degree intentional homicide." *Barbeau*, 883 N.W.2d at 532. Next, the court's independent judgment did not lead to the conclusion that the mandatory

minimum violated the Eighth Amendment. *Id.* at 533–34. Rather, it was consistent with the U.S. Supreme Court cases cited above and reflected

> a societal judgment that this is the very least required, even where the offender is a juvenile, in order to meet legitimate penological goals such as retribution—an expression of society's moral outrage at particularly offensive conduct—deterrence—to deter other potential juvenile homicide offenders—and incapacitation—so that offender himself will not harm anyone else.

*Id.* at 534; *Gregg*, 428 U.S. at 175 ("[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved.").

Petitioner's final argument stemmed from the pronouncement in *Graham* that

> [a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. *It is for the State, in the first instance, to explore the means and mechanisms for compliance.* It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.

*Graham*, 560 U.S. at 75 (emphasis added). Wisconsin provides for release on extended supervision only when a prisoner provides, by clear and convincing evidence, that they are no longer a danger to society. Wis. Stat.

§ 302.114(5)(cm). The Court of Appeals determined that this requirement was consistent with *Graham*, and in particular its allowance for states to assess "demonstrated maturity and rehabilitation" in the first instance. *Barbeau*, 883 N.W.2d 534–35. Under Wisconsin's rule, once Petitioner reached his first supervision eligibility date, he would be free to show that his crime was "influenced by his youth," and thus he was no longer dangerous, and that he had otherwise been rehabilitated. *Id.* at 535.

Even construed generously, Petitioner's brief merely contends that the Wisconsin Court of Appeals got it wrong in the above holdings, not that its rulings were unreasonable in light of U.S. Supreme Court precedent. In other words, this habeas action is nothing more than a thinly veiled attempt at a "do-over" in this Court. Petitioner parrots precisely the same arguments he and his counsel have made all along, in the hope that this Court will disagree with those before it. This is not an appropriate use of a federal habeas petition. The Court cannot construct an appropriate argument on Petitioner's behalf. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). In any event, the Court of Appeals' decision was far from unreasonable. Rather, it was entirely consistent with *Graham* and *Miller*. At the very least, Petitioner has come nowhere close to showing that *all* fairminded jurists would disagree with the Court of Appeals' reasoning. He is not, therefore, entitled to any federal habeas relief.

Petitioner attempts to raise many other specific arguments regarding his sentence. He contends that: 1) because certain studies show differences between adults and children in criminal culpability, Wisconsin should have an entirely separate penalty scheme for juvenile murderers, 2) he lacks a meaningful opportunity for release because statistics reveal that Wisconsin courts rarely allow homicide offenders out on supervision, 3) the

sentencing court did not adequately account for his youth in arriving at the supervision eligibility date, 4) his attorney at sentencing was ineffective for not correcting the use of the term "parole" during the sentencing hearing and in the judgment, and for not raising the aforementioned studies and statistics, and 5) the misuse of the term "parole" created a "new factor" warranting resentencing. (Docket #1 at 7–8; Docket #23 at 2–5).

Respondent asserts that the Court cannot hear any of these claims. None of the first three arguments were raised at any level of the Wisconsin court system. (Docket #24 at 19–22). These arguments are, therefore, procedurally defaulted. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) ("[W]hen the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim."). The fourth argument is both moot, because Petitioner's judgment was amended, and also procedurally defaulted, because it was not raised in the petition for review to the Wisconsin Supreme Court. *Id.* at 22–26; *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (a federal habeas petitioner must present their claims to *every* available level of the state court system). The final claim is purely an issue of state, not federal, law. *See State of Wis. v. Foellmi*, 205 N.W.2d 144, 149–50 (Wis. 1973); *State of Wis. v. Harbor*, 797 N.W.2d 828, 837–38 (Wis. 2011). Federal courts deciding habeas petitions cannot hear claims based solely on state law. *Perruquet*, 390 F.3d at 511. Petitioner chose not to respond to Respondent's allegations of procedural infirmity in his reply. *See* (Docket #25). The Court must, therefore, treat Respondent's arguments as conceded and will not address the merits of Petitioner's other claims. *Williams v. Berge*, 102 F. App'x 506, 508 (7th Cir. 2004) (underdeveloped or non-existent

arguments constitute a waiver of opposition as to the issues they were meant to address, even for *pro se* litigants).

5. **CONCLUSION**

Petitioner has not shown that the Wisconsin Court of Appeals unreasonably applied *Miller* and *Graham* in upholding his sentence. Indeed, he barely even gestured at such an argument. Any other argument suggested in the petition and Petitioner's brief are procedurally infirm and thus cannot be considered by this Court. With all of the claims disposed, the petition must be dismissed with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Finally, the Court closes with some information about the actions that Petitioner may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this

deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of December, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge